(3 Misc. Rep. 184.)

ISHAM v. POST.[1]

POST v. ISHAM et al.

(Supreme Court, Special Term, Kings County. October 24, 1892.)

1. TRUSTS—NOTICE TO THIRD PERSONS—SIGNATURE AS "TRUSTEE."
    Where plaintiff gave a check to defendant for money to be loaned by defendant, the fact that plaintiff appends to his signature to the check the word "Trustee" is not notice that the trust was of such character that the trustee was limited solely to "legal investments," so as to render defendant liable to the trust estate if the securities taken for the loan prove worthless.

2. SAME—LOAN ON COLLATERALS.
    Where defendant, in such case, took certificates of stock as collateral security for the loan, without inquiring as to their validity at the office of the corporation, which was accessible to him, or taking other precautions, and the certificates proved to be forgeries, defendant was guilty of such negligence as to render him liable for the loss.

Actions by Henry H. Isham, as trustee, against Mary E. Post, as administratrix of Augustus T. Post, deceased; and by Mary E. Post, as administratrix, against Henry H. Isham and others.

Henry H. Isham, trustee of the Trumbull estate, of New Jersey, having $25,000 belonging to the trust, uninvested, gave a check for this amount to Augustus T. Post, who was a banker and dealer in investment securities, to loan for him. The check was signed "Henry H. Isham, Trustee." Upon receipt of the check, Mr. Post loaned the $25,000 to Mills, Robeson & Smith, who entered the loan upon their books as made to Post. The collateral upon which the loan was made was the stock of the Chicago, Milwaukee & St. Paul Railroad, (preferred,) and the New York & New England Railroad. The certificates for the greater part of this stock had been raised by Smith, one of the firm of Mills, Robeson & Smith, and upon the failure of this firm the forgeries were first discovered.

---

[1] Affirmed, without opinion. See 23 N. Y. Supp. 1168.

Frederic A. Ward, for plaintiff.
Alfred Ely and William G. Choate, for defendant.

CULLEN, J.   Even though the plaintiff were a party to the wrong, if the defendant's intestate was guilty of a spoliation of the trust estate, the plaintiff, in his representative character, can maintain this action.   But I do not think that the loan Mr. Post assumed to make was per se a misuse of trust funds, for which he would be responsible.   The word "Trustee," in the check, gave notice to the banker that the funds were not, or might not be, the property of the plaintiff individually.   Jaudon v. Bank, 8 Blatchf. 430;  Shaw v. Spencer, 100 Mass. 382;  Baker v. Bliss, 39 N. Y. 70.   Therefore, if the transaction was prima facie a waste or spoliation of the trust estate, or if the trustee apparently was using the trust funds for his personal benefit, the banker participating in the matter, and receiving the funds, would be liable.   But I think that this transaction was not of that character.   I find as a fact that Post had no knowledge or notice that that money belonged to the particular trust estate of which it now seems to be the property.   The transaction was not dishonest or hazardous.   The plaintiff himself had no thought that he was doing wrong.   Loans on collateral to brokers are made by banks, bankers, and trust companies.   To declare the defendant liable on the theory that the loan, as it was intended to have been made, was illegal, and a waste of trust funds, it is necessary to hold, not only that the word "Trustee" put the receiver of the check on notice, not only that the plaintiff did not hold the moneys in his own right, but that the trust was of such a character that the trustee was limited solely to what are called "legal investments."   I think that would be carrying the doctrine of implied notice too far.   In this very case the trustee could, with the assent of the beneficiaries, invest in any class of securities.   It is a matter of common knowledge that many of the bank accounts in the name of a person simply as trustee require no such strictness in investments.   I am not disposed, therefore, to hold the defendant liable on this ground.

The question then arises as to the responsibility for receiving the forged or altered certificates of stock.   I have searched in vain for precedent in this respect.   Two cases arising from stock transactions are to be found in the Reports, which approach the case in hand, but still are to be distinguished from it.   In Lambert v. Heath, 15 Mees. & W. 484, the stockbroker was held not liable for the invalidity of certain Kentish Coast Railroad scrip purchased by him for his principal, on the ground that he bought the thing he was ordered to buy; that is, the scrip that was selling in the market.   In Peckham v. Ketchum, 5 Bosw. 506, the stock delivered by the broker to his principal was a genuine certificate, but was alleged to be invalid because of an overissue of stock by the officers of the New York & New Haven Railroad Company.   Here, also, the broker was held not liable.   But here the loan was conceded to have been made on the faith of the collaterals;  and the securities on which it was made—spurious securities—were not the securities contemplated by the parties, nor did the banker take any precautions to

verify the genuineness of the securities, and guard against forgery. There were accessible to the banker both the office of the company issuing the stock, and the office of the trust company which registered the certificates. An inquiry at either office would have disclosed the forgery, and prevented the loss. It is true that the banker did not take this precaution in the case of his own loan. But this does not determine the question of care. He undoubtedly relied on the standing of the firm to whom he made the loan. But this confidence was his own. The plaintiff did not know the parties. This is a hard case for either party on whom ultimately the liability is adjudged to rest. But, where so simple a precaution as that already stated would have exposed the fraud, I think that the liability should rest on the party who neglected to avail himself of it. There will therefore be judgment for plaintiff, with costs.

This decision disposes of the cross suit of Post v. Isham, in which the complaint will be dismissed, without costs.